## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| Patrick Nilo Gil, | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **1:22-cv-618 (RDA/JFA)** |
| | ) | |
| Jane Doe, *et al.*, | ) | |
| **Defendants.** | ) | |

### MEMORANDUM OPINION AND ORDER

Patrick Nilo Gil, a Virginia inmate, has filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 alleging that his constitutional rights have been violated while he was detained at the Nottoway Correctional Center ("Nottoway"). Dkt. 1. By Order dated October 20, 2022, the Court screened his Complaint to determine whether it is frivolous, malicious, or fails to state any claims upon which relief may be granted. 28 U.S.C. § 1915A.[1] The Court noted the deficiencies and granted Plaintiff leave to amend. Plaintiff filed an amended Complaint on November 18, 2022. Dkt. 12. Plaintiff did not cure the deficiencies noted in the October 20, 2022 Order. On February 8, 2023, the Court screened the amended Complaint, noted deficiencies, and granted Plaintiff leave

---

[1] Section 1915A provides:

(a) **Screening.** The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

(b) **Grounds for dismissal.** On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—

(1) is frivolous, malicious, or fails to state a claim upon which relief can be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

to amend and cure the deficiencies.  Dkt. 13.  Plaintiff filed a second amended Complaint on March

10, 2023.  Dkt. 14.  In screening the second amended Complaint, the Court has identified six claims

(which the Court has designated as claims A through F) and noted deficiencies.  For the reasons

stated below, Plaintiff's claims A, C, D, and F will be dismissed for failure to state a claim.

Plaintiff will be allowed leave to amend Claims D and F because amendment may not be futile,

and pendant state law claims B and E will be held in abeyance and dismissed if Plaintiff fails to

file an amended Complaint that cure the deficiencies noted in claims D and F.

## I. SECTION 1915A

Pursuant to § 1915A, a court must dismiss claims based upon "an indisputably meritless

legal theory," or where the "factual contentions are clearly baseless." *Clay v. Yates*, 809 F. Supp.

417, 427 (E.D. Va. 1992) (citation and internal quotation marks omitted).  Whether a complaint

states a claim upon which relief can be granted is determined by "the familiar standard for a motion

to dismiss under Fed. R. Civ. P. 12(b)(6)." *Sumner v. Tucker*, 9 F. Supp. 2d 641, 642 (E.D. Va.

1998). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly,

it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of

defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation

omitted).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded

allegations are taken as true, and the complaint is viewed in the light most favorable to a plaintiff.

*See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

"[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint must "give the defendant

fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*,

355 U.S. 41, 47 (1957); *see Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990) (explaining how a pleading must be presented "with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search" of the pleader's claims "without untoward effort"). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

## II. SECOND AMENDED COMPLAINT

In his second amended Complaint, Plaintiff has again submitted a rambling, and at times inconsistent,[2] narrative that does not identify claims properly by labeling them as previously directed. He also fails to identify any action or inaction by any of the named Defendants that may constitute a violation of his constitutional rights. Further, Plaintiff ignored the directive in the October 20, 2022 Order that in order to state a cause of action under § 1983, he must allege facts indicating that

> he was deprived of rights guaranteed by the Constitution or laws of the United States and that the alleged deprivation resulted from conduct committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Each named defendant in a § 1983 complaint must have had personal knowledge of and involvement in the alleged violations of plaintiff's constitutional rights for the action to proceed against that defendant.

*De'Lonta v. Fulmore*, 745 F. Supp. 2d 687, 690-91 (E.D. Va. 2010); Dkt. 11 at 2-3.

Plaintiff's second amended Complaint, despite the direction provided in the October 20,

---

[2] For instance, in his second amended complaint, Plaintiff indicated the end date of his time in the RHU was June 11, 2020, which is inconsistent with his additional allegations that he was reassigned to his previous housing unit on June 9, 2020, and that he was returned to the RHU on June 11, 2020. Dkt. 14 at 8, 9. In addition, in the original complaint, Plaintiff stated he was in the RHU through June 8, 2020. Dkt. 1 at 6. Accordingly, the Court will use June 8, 2020 as the date he was transferred out of the RHU.

2022 Order, does not provide any facts to support liability on the behalf of Defendants Clarke or Call. Dkt. 14 at 3. Accordingly, Plaintiff has failed to state a claim against either Defendants, therefore, both will be dismissed.

In reviewing the second amended Complaint, as noted, the Court was able to discern six claims, which the Court has designated claims A through F. Dkt. 14 at 11-15.

A. Defendants Jane Doe #1, Fowlkes, Ward, Hite, Sherwood, and Robinson mishandled the investigation of an unfounded Prison Rape Elimination Act ("PREA") claim, which resulted in Plaintiff being held in the restrictive housing unit ("RHU") from May 20, 2020 through June 8, 2020 in violation of Plaintiff's Eighth Amendment rights. Dkt. 14 at 11-12.
B. Defendants Jane Doe #1, Fowlkes, Ward, Hite, Walton, Sherwood, Robinson, and Jane Doe #2 negligently failed to properly investigate the PREA complaint and prevent the assault on the Plaintiff in violation of state tort law. *Id.* at 12.
C. "The defendants" placing Plaintiff in the RHU on an unfounded PREA complaint caused him to lose his prison job in violation of his Eighth Amendment rights. *Id.* at 13.
D. "The defendants" failed to provide Plaintiff with proper medical treatment and pain medication, and no disciplinary charges were filed in violation of his Eighth and Fourteenth Amendment rights. *Id.* at 13-14.
E. "The defendants" were negligent, in violation of state tort law, because they failed to call the witnesses Plaintiff requested at the hearing. *Id.* at 14.
F. Jane Doe #2 was told about the attack ten minutes before it happened, and she failed to prevent the attack on Plaintiff in violation of his Eighth Amendment rights. *Id.* at 14-15.

The facts alleged regarding the remaining Defendants are, at best, weak and conclusory.

## A. Claim A: Unfounded PREA Complaint

Plaintiff alleges that his cellmate, inmate Simmons, made a false PREA allegation against him and that Plaintiff was placed in the RHU for nineteen days while the claim was investigated. Plaintiff was transferred back into general population on June 9, 2020, without a hearing, because the investigation determined the allegation was "unfounded." Dkt. Nos. 1 at 6; 14 at 8.[3]

---

[3] The Virginia Department of Corrections ("VDOC") PREA Operating Procedures ("OP") defines an "unfounded allegation" as "[a]n allegation that was investigated and determined not to have occurred." VDOC OP 038.3, Definitions.

"[C]hanges in a prisoner['s] location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991).

Here, upon learning of the allegation against Plaintiff, Nottoway officials had a duty to "take immediate action to protect the" victim, 28 C.F.R. § 115.62, and to take protective "measures, such as housing changes or transfers for inmate victims or abusers." *Id.* § 115.67(b); VDOC OP 083.3 (IV)(B)(6) ("In order to protect any inmate … [involved in a PREA allegation], the Shift Commander may administratively reassign the victim and/or abuser temporarily to alternate housing"). VDOC Operating Procedures required that Nottoway officials: begin an investigation immediately and complete the investigation within thirty days, VDOC OP 038.3 (V)(A)(2); "[s]eparate the alleged victim and abuser to ensure the victim's safety," *id.* 083.3 (IV)(B)(1)(a); and "[e]nsure that the alleged abuser does not take any actions that could destroy physical evidence[,]" *id.* at 083.3 (IV)(B)(1)(d). Nottoway officials are also prohibited from revealing "any information related to a sexual abuse report to anyone other than to the extent necessary, as specified in agency policy, to make treatment, investigation, and other security and management decisions." *Id.* § 115.61; VDOC OP 038.3(III)(B)(3)(d). In sum, the Nottoway officials' actions in separating Plaintiff and Simmons and placing Plaintiff in RHU were in accordance with established operating procedures, as well as with the similar federal regulations.

Further, being reassigned to the RHU for administrative purposes while the PREA investigation was ongoing did not violate Plaintiff's constitutional rights. *See Bell v. Wolfish*, 441 U.S. 520, 535-39 (1979); *Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002); *see also Dilworth v. Adams*, 841 F.3d 246, 255 (4th Cir. 2016) ("[P]risons and jails may and routinely do place inmates

5

charged with disciplinary infractions in 'administrative segregation' pending their disciplinary hearings, allowing both prison officials and inmates time to investigate and prepare for those hearings."); *Brown v. Braxton*, 373 F.3d 501, 503 (4th Cir. 2004) (mentioning how the inmate was placed in "administrative detention" pending disciplinary hearing while officials investigated the altercation). It is clear that the Nottoway officials that moved Plaintiff to the RHU did so for a valid penological purpose (investigation of a PREA complaint and the safety of the complainant) and not for punishment, which is evident by Plaintiff's return to the general population after the investigation determined the PREA complaint was unfounded. *See Thorpe v. Clarke*, 37 F.4th 926, 945 (4th Cir. 2022) (explaining how "the State's authority to maintain prisoners in" administrative segregation "ends" when the situation that justified it ends).

In addition, based upon Plaintiff's allegations, the report was determined to be unfounded, which is, at best, akin to being falsely charged with a disciplinary offense. Generally, "a false disciplinary charge cannot serve as the basis for a constitutional claim." *Cole v. Holloway*, 631 F. App'x 185, 186 (4th Cir. 2016). Further, Plaintiff was not entitled to a hearing because he was never charged with a disciplinary infraction, and he had no constitutional right to a hearing before being placed in administrative segregation during the investigation. *Cf. Wycoff v. Nichols*, 94 F.3d 1187, 1188-90 (8th Cir. 1995) (finding that the reversal of the disciplinary case against the inmate constituted part of the due process the inmate received, which cured the alleged due process violation based on the disciplinary committee's initial decision to sanction the inmate).[4]

---

[4] To the extent Plaintiff is alleging he has a liberty interest in avoiding administrative segregation, the Eighth Circuit, relying on *Sandin v. Conner*, 515 U.S. 472 (1995), rejected a similar claim in *Wycoff v. Nichols* where an inmate served forty-five days in administrative segregation before the disciplinary charge against him was dismissed. *Wycoff*, 94 F.3d at 1188 (8th Cir. 1996). *Wycoff* found that the reversal of the case against the inmate constituted part of the due process he received and cured any alleged due process violations which may have occurred during the initial decision to sanction the inmate. *Id.* at 1189.

Consequently, there is no violation of a constitutional right and the alleged inadequate investigation is insufficient "to state a civil rights claim." *Gomez v. Whitney*, 757 F.2d 1005, 1005 (9th Cir. 1985).

Finally, to the extent that Plaintiff alleges his release back into the general population exposed him to the risk of "undue harm," there are no allegations of fact in his second amended complaint that indicate Plaintiff was at risk when he was released from the RHU on June 9, 2020. It is generally understood that "prisons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more." *Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004). Thus, "[a]ny time an individual is incarcerated, there is some risk that he may be a victim of violence at the hands of fellow inmates . . . ." *Westmoreland v. Brown*, 883 F. Supp. 67, 74 (E.D. Va. 1995). Accordingly, a baseline risk of assault inherent to prison life cannot support an Eighth Amendment claim. *See Grieveson v. Anderson*, 538 F.3d 763, 776-77 (7th Cir. 2008). To prove a § 1983 claim against an official for failing to protect him from injury, a prisoner plaintiff must establish: (1) he was "incarcerated under conditions posing a substantial risk of serious harm" and (2) the defendant prison official had a "sufficiently culpable state of mind," one of "deliberate indifference." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation omitted). Deliberate indifference is "somewhere between negligence and purpose or knowledge: namely, recklessness of the subjective type used in criminal law." *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995).

---

Like the inmate in *Sandin*, Wycoff has no liberty interest in avoiding administrative segregation unless the conditions of his confinement "present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Sandin*, 515 U.S. at 486. There is nothing in the record to suggest that the conditions of Wycoff's administrative segregation were atypical of the ordinary conditions of confinement or that they rose to the level of a significant deprivation. *Wycoff*, 94 F.3d at 1190.

Here, Plaintiff alleges he was assaulted by inmate Culpeper on May 17, 2020, while he was housed in Lower A West. Dkt. 14 at 4-5. When he was released back into the general population, Plaintiff was assigned to a different unit, Lower B West. *Id.* at 9. There are no factual allegations that show assigning Plaintiff to Lower B West presented a known risk of harm to Plaintiff, and there are no allegations of fact that any of the named Defendants had any involvement in the Plaintiff's housing assignment when he was released from the RHU. It is apparent that since Plaintiff has again failed in his second amended Complaint to establish that his release into Lower B West presented a known risk of harm to Plaintiff that leave to amend would be futile. Claim A does not state a claim and will be dismissed.

### C. Claim C: Loss of Job

Claim C alleges Plaintiff's Eighth Amendment rights were violated because he lost his prison job when he was moved to the RHU. This claim fails to identify which of "the defendants" he is alleging is liable, despite being advised expressly about using such phrases as "the defendants." Dkt. 11 at 2. In any event, as a matter of law, the loss of a prison job does not state a constitutional claim.

> [I]nmates have no independent constitutional right to a prison job, and as such, prison officials may generally terminate an inmate from a particular prison job for any reason without offending federal due process principles. *See, e.g., Altizer v. Paderick*, 569 F.2d 812 (4th Cir. 1978) (work assignments are generally within the discretion of the prison administrator); *Alley v. Angelone*, 962 F. Supp. 827, 834 (E.D. Va. 1997) (prisoner did not have a protected interest in continued employment); *Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 50-51 (5th Cir. 1995) (same); *Coakley v. Murphy*, 884 F.2d 1218, 1221 (9th Cir. 1989) (holding that inmates have no protected property interest in continuing in work-release program).

*Robles v. Sturdinvant*, No. 7:14-cv-00070, 2014 WL 4853409, at *1 (W.D. Va. Mar. 27, 2014), *aff'd*, 583 F. App'x 129 (4th Cir. 2014). Again, leave to amend would be futile and claim C will be dismissed for failure to state a claim.

### D. Claim D: Deliberate Indifference to a Serious Medical Need

In his second amended Complaint, Plaintiff alleges that he was seriously injured on June 11, 2020, when he was assaulted by five inmates. Thereafter, he alleges "the defendants" failed to provide Plaintiff with proper medical treatment and pain medication; no disciplinary charges were filed in violation of his Eighth and Fourteenth Amendment rights; and, because he filed complaints and grievances, he was returned to the RHU on June 11, 2020 and remained there until he was transferred to the Greensville Correctional Center on July 13, 2020. Dkt. 14 at 8, 13.

The portion of this claim that complains that no disciplinary charges were filed against Plaintiff's alleged attackers does not state a claim and will be dismissed. "An inmate ... cannot bring a § 1983 claim alleging denial of a specific grievance procedure," *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017), and he does not have any right to an investigation, to enforce PREA, or to assert criminal charges, *see generally DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989) ("[T]he Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."); *see Smith v. McCarthy*, 349 F. App'x 851, 859 (4th Cir. 2009) (reasoning that because plaintiffs in a § 1983 action had no right to a criminal investigation or prosecution of another, plaintiffs had failed to allege a violation of a clearly established statutory or constitutional right); *Viar v. Dep't of Corr.*, No. 7:21-cv-00150, 2021 WL 1433443, at *2 n.3 (W.D. Va. Apr. 15, 2021) (finding that an inmate has "no constitutional right to insist upon an investigation or criminal prosecution) (citing *Lopez v. Robinson*, 914 F.2d 486, 494 (4th Cir. 1990)).

To state a claim of deliberate indifference to a serious medical need, "the need must be both apparent and serious, and the denial of attention must be both deliberate and without

9

legitimate penological objective." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citation omitted). The Plaintiff must show that the Defendants both knew of the risk and knew that their conduct was "inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n.2 (4th Cir. 1997). A prison health care provider is not deliberately indifferent if he or she responds reasonably, or even merely negligently, to known risks. *See Brown v. Harris*, 240 F.3d 383, 389-91 (4th Cir. 2001); *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998).

In addition, while delay of, or interference with, medical treatment can amount to deliberate indifference, *see Formica v. Aylor*, 739 F. App'x 745, 755 (4th Cir. 2018); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006), there is no Eighth Amendment violation

> unless "the delay results in some substantial harm to the patient," such as a "marked" exacerbation of the prisoner's medical condition or "frequent complaints of severe pain." *See Webb v. Hamidullah*, 281 F. App'x 159, 166-67 (4th Cir. 2008) (emphasis added); *see also Sharpe v. S.C. Dep't of Corr.*, 621 F. App'x 732, 734 (4th Cir. 2015) ("A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." (internal quotation marks omitted)).

*Formica*, 739 F. App'x at 755. Here, Plaintiff does not identify a specific defendant or defendants. *See,* VDOC, *supra* note 3. Further, in both the original and first amended Complaint, the allegations of deliberate indifference to a serious medical need were that unidentified persons, not any named Defendant, failed to provide him with "pain" medication and a cane for "support" when getting in and out of bed, Dkt. Nos. 1 at 10; 12 at 11, which indicates that Plaintiff was seen by medical personnel after the alleged assault on June 11, 2020 and implies that he was denied medication and a cane. The second amended Complaint, however, fails to not only identify any defendant but it is conclusory in nature. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Plaintiff needs to provide specifics of when (specific dates); who the medical personnel were; his specific injuries;

what treatment was provided (to include any medications that were provided) or denied; and the names of the persons that escorted him to the medical unit or the names of the persons that refused to take him to the medical unit.  Because amendments may not be futile, Plaintiff will be allowed leave to amend his complaint to cure these deficiencies.

### F. Failure to Protect: Jane Doe #2

Plaintiff has failed to identify Jane Doe #2 who he alleges failed to take any action to protect him on June 11, 2020, even though she allegedly knew he would be attacked "10 minutes" before he was attacked. Dkt. 14 at 10, 15. The claim is largely conclusory.  An Eighth Amendment claim for failure to protect is comprised of two elements.  First, under the objective prong, an "inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.  Second, the subjective prong requires the inmate to "show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (citing *Farmer*, 511 U.S. at 837).  The official must have a subjective "state of mind more blameworthy than negligence," akin to criminal recklessness. *Farmer*, 511 U.S. at 835, 839-40.  A prison official's "general knowledge of facts creating a substantial risk of harm is not enough" because he "must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Johnson*, 145 F.3d at 168.  To state a claim for failure to protect, a plaintiff must establish "the defendants had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (citation omitted).

11

Plaintiff does not provide sufficient allegations to establish Jane Doe # 2 knew he was in any danger. Simply her talking with another inmate shortly before the alleged assault does not establish that she was aware of any danger to Plaintiff. In addition to the substantive deficiencies with this claim, Plaintiff must also identify Jane Doe # 2 by physical characteristics (height, weight, hair color, eye color, race, etc.); the physical location Jane Doe #2 was working at on June 11, 2020, and the time of the assault. Finally, Plaintiff must establish, with specific facts, the facts upon which he makes his allegation that Jane Doe #2 knew, "10 minutes" before the attack, that Plaintiff was at risk of harm. Allegations of a violation of a Plaintiff's constitutional rights "must be specifically identified. Conclusory allegations will not suffice." *Wise v. Bravo*, 666 F.2d 1328, 1333 (10th Cir. 1981) (citing *Brice v. Day*, 604 F.2d 664 (10th Cir. 1979)); *see Iqbal*, 556 U.S. at 678. Because amendment may not be futile, Plaintiff will be allowed leave to amend his complaint to cure the deficiencies noted.[5]

The amended complaint *must* cure the deficiencies noted in claims D and F, and reallege pendant claims B and E, together with all facts in support of each of those claims. In setting forth the facts in his amended complaint, plaintiff should refrain from presenting arguments, editorializing, and trying to be dramatic, all of which inhibit the ability to comprehend the nature of the claim Plaintiff is attempting to present. Plaintiff is expressly advised that the third amended

---

[5] If the Court has failed to list a claim that Plaintiff included in his second amended complaint, he must include that claim in his third amended complaint. This means that he must label the claim by letter (starting with the letter "G" since the Court listed the claims it could identify in the second amended Complaint with the letters A through F). After properly labeling the claim, Plaintiff must name the defendants associated with the claim, provide the facts associated with claim, and include the facts that establish the acts or failure to act that implicates each defendant named; set forth specific facts in support of his assertion that the defendant or defendants violated his constitutional rights by their action or inaction (including dates), and which constitutional right was violated. Plaintiff must use defendants' names rather than a generic designation of "defendants."

complaint supersedes the original and previous amended complaints. *See Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010) (stating that as a general rule an amended complaint supersedes "the original, the latter being treated thereafter as non-existent") (citation omitted).

## III. CONCLUSION

Accordingly, it is hereby ORDERED that Defendants Clarke or Call are DISMISSED as defendants in this civil action; and it is

FURTHER ORDERED that Claims A and C are dismissed for failure to state a claim; and it is

FURTHER ORDERED that Plaintiff particularize and amend his complaint by filing a third amended complaint within thirty (30) days of the date of this Order using the enclosed standardized §1983 complaint form by curing the deficiencies set forth in this Order, which includes (i) naming every person he wishes to include as a defendant; (ii) identifying the constitutional right he alleges was violated; and (iii) submitting a short, detailed statement of background facts which describes the **specific conduct of each defendant** whom he alleges violated his constitutional rights, as detailed in this Order, and including the facts giving rise to his complaint, the dates of each incident, the persons involved, the reasons why he believes each defendant is liable to him, and the remedies sought. Plaintiff must reallege the facts from the relevant facts from his original and amended complaints in his third amended complaint, reassert the two pendant claims (claims B and E) and he must include his civil action number, **1:22cv618 (RDA/JFA)**, on the first page of his third amended complaint. Plaintiff is advised that **this third amended complaint will serve as the sole complaint in this civil action**; and it is

FURTHER ORDERED that Plaintiff's failure to comply with any part of this Order within thirty (30) days from the entry of this Order, or failure to notify the Court immediately upon being transferred, released, or otherwise relocated, may result in the dismissal of this complaint pursuant to Federal Rule of Civil Procedure 41(b).

The Clerk is directed to send a copy of this Order and a § 1983 form to Plaintiff.

Entered this ____7____ day of ____June_____ 2023.

Alexandria, Virginia

_____ /s/
Rossie D. Alston, Jr.
United States District Judge

14